IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT ROSS, et al.,
    Plaintiffs,

v.

ABERCROMBIE & FITCH
COMPANY, et al.,
    Defendants.

Case No. 2:05-CV-819
(Lead case)
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of a Motion for Reconsideration of the Magistrate Judge's Order (Doc. #34 in case no. 05-848; Doc. #24 in case no. 05-964; and Doc. #26 in case no. 05-998) as well a Motion to Stay (Doc. #26 in case no. 05-964 and Doc. #28 in case no. 05-998). For the reasons that follow, the Motion for Reconsideration is denied and the Motion to Stay is granted.

I.

This consolidated action involves ten cases. Six of the ten cases are governed by 15 U.S.C. § 78u-4, the Private Litigation Securities Act ["PLSA"], and four of the cases are shareholder derivative actions. With respect to the six cases under the PLSA, the Magistrate Judge has ordered that class member City of Dearborn Heights Act of 345 Police and Fire Retirement System be appointed as lead Plaintiff. The Gianetti Investor Group, which had also filed a motion to be appointed as lead Plaintiff, moves for reconsideration of the Magistrate

Judge's Order. As a separate matter, Defendant Abercrombie & Fitch Co. ["A&F"] moves for a stay of proceedings in this court. The Court considers the merits of these motions.

**A. Motion for Reconsideration.**

### 1. The Magistrate Judge's Order

On June 15, 2006, the Magistrate Judge issued an Order appointing the City of Dearborn Heights Act of 345 Police and Fire Retirement System ["Dearborn"] as lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3). It is undisputed that Dearborn purchased A&F common stock during the class period (June 2, 2005 through August 16, 2005), acquiring 1,781 shares at a cost of $116,137.86. Dearborn claims to have suffered a losses on its investment of slightly in excess of $19,000. The competing group, the Gianetti Group, consists of four individuals[1] who purchased 4,200 shares of stock at a cost of $300,000. The Gianetti Group claims to have a loss of $60,000 on the investment.

In considering which entity would be the proper lead Plaintiff, the Magistrate Judge stated:

> § 78u-4(a)(3) provides that, in a class action, and upon appropriate motion, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interest of class members . . . ." That statutory section also creates a rebuttable presumption that the most adequate plaintiff in any private action arising under the Act is the "person or group of persons" who filed either the complaint or an appropriate motion, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure with respect to being an adequate class representative and, "in the determination of the Court, has the largest financial interest in the relief sought by the class . . . ." This presumption can be rebutted

---

[1] In particular, Stanley Sved, the named Plaintiff in case no. 05-879; two residents of Italy, Raffaele Gianetti and Ennio Lucarelli; and United States resident, Jim Shuping.

2

> only by proof that the presumptive most adequate Plaintiff is either subject to unique defenses that render him or her incapable of adequately representing the class, or if that plaintiff "will not fairly and adequately protect the interests of the class . . . ." 15 U.S.C. § 78u-4(a)(3)(B); *see also In re Cardinal Health, Inc. Securities Litigation*, 226 F.R.D. 298 (S.D. Ohio 2005).

(Doc. #33 at 6). The Magistrate Judge found that each competing potential lead Plaintiff had made a timely motion, had completed the required certification and had demonstrated it otherwise satisfied the requirements of Rule 23 with respect to having claims typical of the class. The Magistrate Judge found no unique claims or defenses that would prevent either entity from representing the interests of the class. Thus, the Magistrate Judge concluded that the only two issues to resolve were "(1) which of the two is presumptively the most adequate plaintiff, and (2) whether the rebuttable presumption created after that determination is made has been rebutted by evidence that the presumptive lead plaintiff would not be an adequate class representative." (*Id.* at 6-7).

With respect to the first issue, the Gianetti Group was found to be the presumptive most adequate Plaintiff because it claimed a greater financial loss. The Magistrate Judge concluded, however, that Dearborn was able to rebut the presumption that the Gianetti Group was the most adequate Plaintiff. The Magistrate Judge observed that the most adequate Plaintiff should "demonstrate to the Court's satisfaction 'how they will minimize the risk that the case will be lawyer-driven.' In other words, the group must be 'a cohesive enough unit to adequately represent other plaintiffs' without being unduly influenced by the lawyers who represent the group and may have participated in some way in its formation.'" (*Id.* at 8, citing *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F.Supp.2d 18, 24 (D. Mass. 2000)). In considering the issue, the Magistrate Judge noted:

3

> [T]he Gianetti Group has not submitted either affidavits from its individual members or any type of joint affidavit or declaration from the group members concerning their cohesiveness, any mechanism for making decisions, or any explanation of why the four individuals, only two of whom had any prior relationship, had been selected and would intend to proceed as a lead plaintiff. Rather, the Gianetti Group has attempted to address this issue through a declaration of Gregory M. Nespole, one of the attorneys representing the Gianetti Group. Mr. Nespole's declaration, which purports not to waive any applicable attorney-client privilege or work product protections, describes his participation in a conference call with three of the four members of the group (excluding Mr. Lucarelli) during which each of the three "understood and accepted their responsibilities with respect to representing the class, monitoring and participating in the litigation, and supervising counsel." The three purportedly agreed to consult with each other on a regular schedule, as well as to consult with counsel, and to do so in advance of each major litigation event or decision. They also agreed to travel in order to facilitate their depositions. Thus, according to the Gianetti Group, there are adequate procedures in place to insure that they will properly represent the class members. . . .
>
> Leaving aside the fact that any declaration or affidavit submitted to the Court is hearsay because it represents a statement made out of court, the contents of Mr. Nespole's declaration are themselves hearsay because he has related statements made by the three members of the Gianetti Group to him (which is classic hearsay) and has argued that the Court should accept those representations as true. Consequently, even though the Court is willing to accept a single level of hearsay (e.g. the affidavit) the Nespole declaration is double hearsay. While the Court will not strike it from the record, it agrees with Dearborn that the affidavit essentially has no evidentiary value on the question of whether the Gianetti Group is sufficiently cohesive and has adopted sufficient procedures to insure that this litigation will not be "lawyer-driven."
>
> There is no other evidence in the record concerning the relationship between the members of the Gianetti Group or its efforts to act as a cohesive unit in prosecuting this information. In a similar situation, Judge Rose of this Court, in *Slone v. Fifth Third Bancorp*, case no. 1: 03-cv-211 (entry and order filed April 28, 2004), noted that declarations are necessary in order to address these issues, and he required "the purported class members, not their lawyers" to submit the affidavits indicating that they could work together effectively . . . as a group. *Id.* at 1011. Absent such evidence, the Court cannot conclude that the concerns addressed by the decision cited above have been satisfied on this record. Further, because the adequacy of the Nespole declaration has been at issue for some time, and because there is significant case law supporting Dearborn's position that such an attorney declaration is not a proper means of advising the Court as to the

> required considerations, the Court deems the absence of any declaration or affidavit from members of the Gianetti Group itself to be further evidence of the Group's inability to function as a cohesive unit. For these reasons, the Court concludes that Dearborn has adequately rebutted the presumption that the Gianetti Group should serve as lead plaintiff. Because Dearborn otherwise satisfies the statutory requirements, and because there are no other competing candidates, the Court concludes that Dearborn must be appointed as the lead plaintiff.

(Doc. #33 at 8-10).

### 2. The Gianetti Group Members' Motion

The Court notes at the outset that only two of the original four members of the Gianetti Group, Mr. Gianetti and Mr. Lucarelli, seek Reconsideration of the Magistrate Judge's Order[2]. These individuals argue that the Magistrate Judge should have considered appointing Mr. Gianetti or Mr. Lucarelli, either individually or together, as lead Plaintiff. The individuals argue that the Magistrate Judge's failure to sever them from the larger Gianetti Group was clear error.

Before addressing the merits of this argument, the Court first considers the standard of review applicable to the Magistrate Judge's Order. Although the Gianetti Group members argue that the ruling was on a dispositive matter, the Court disagrees. The appointment of lead Plaintiff is not a dispositive matter. Thus, under Fed. R. Civ. P. 72(a), "[t]he district judge . . . shall consider such objections [to the order] and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clearly erroneous standard "'mandates that the district court affirm the magistrate's decision unless, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed. In the absence of

---

[2] As Dearborn points out in its response to the Motion to Reconsider, there is no explanation as to why the other two members of the Gianetti Group, Mr. Sved and Mr. Shuping, have not joined in the motion.

5

clear error, the magistrate's order must stand.'" *Balalovski v. Lucent Technologies, Inc.*, 2003 WL 21011148, *4 (S.D. Ohio April 10, 2003) (Sargus, J.), quoting *Farley v. Farley*, 952 F.Supp. 1232, 1235 (M.D.Tenn.1997) (internal citations omitted). To establish that a Magistrate Judge's opinion is contrary to law, an aggrieved party must demonstrate that the conclusions ignore or contradict relevant precepts of law. *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992) (Kinneary, J.).

Turning to the merits of the objections raised by Mr. Gianetti and Mr. Lucarelli, the Court finds that the decision of the Magistrate Judge was neither clearly erroneous nor contrary to law. The Magistrate Judge did not ignore the fact that Mr. Gianetti and Mr. Lucarelli "each have a larger financial interest" than Dearborn. (Doc. #33 at 7). The fact that the Magistrate Judge failed to pick apart the proposed group to find the most adequate individual or individuals from within, was not error. The record did not include any evidence from the group or "from its individual members" as to the ability to adequately represent the group. (Doc. #33 at 8) (emphasis added). There was no "joint affidavit or declaration from the group members concerning their cohesiveness, any mechanism for making decisions, or any explanation of why the four individuals, only two of whom had any prior relationship, had been selected and would intend to proceed as a lead plaintiff." (Doc. #33 at 8) (emphasis added). In view of this lack of evidence, there was no basis from which to ascertain the ability of the Gianetti Group as a whole, or its members, to fairly and adequately represent the interests of the class[3]. There is no

---

[3]The Court notes that, in connection with the Motion to Reconsider, Mr. Gianetti and Mr. Lucarelli have tendered declarations on the issue of appointment as lead Plaintiff. The Court declines to consider the declarations at this juncture since they were never provided to the Magistrate Judge in connection with the earlier filed motion. The Court notes that Rule 72(a) "is not a *de novo* review permitting a 'second shot' based on new arguments." *Claytor v. Computer Assoc. Int'l, Inc.*, 211 F.R.D.

requirement in the PLSA that the Court realign a proposed group to cure a deficiency in adequacy of representation.

In sum, the Court finds that the Magistrate Judge's decision was neither clearly erroneous nor contrary to law. The Motion to Reconsider is therefore denied.

**B. Motion to Stay.**

Defendant A&F moves to stay proceedings in the derivative cases until the later of (1) the date upon which the Defendants' Motions to Dismiss are decided and (2) the date upon which A&F's Special Litigation Committee decides how the derivative actions should proceed. With respect to the latter issue, A&F has filed a Notice of Issuance of the Special Litigation Committee Report and Decision. The Committee concludes, *inter alia*, that A&F should seek dismissal of the derivative actions. (Doc. #89). In addition, the Court observes that the derivative cases are currently subject to a discovery stay pursuant to 15 U.S.C. § 78u-4(b)(3)(B), which provides:

> (B) Stay of discovery
> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

The Plaintiffs previously moved to lift the stay but, on October 5, 2006, the Magistrate Judge issued an Order finding that continuance of the stay was appropriate and that the Plaintiffs are not suffering any undue prejudice as a result. (Doc. #84, case no. 05-819). In light of the fact

---

665, 667 (D. Kan. 2003), citing *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 302 (D. Kan. 2000).

7

that this case is currently subject to the foregoing stay, A&F's outstanding Motions to Stay are granted.

## II.

In light of the foregoing, the Motion for Reconsideration of the Magistrate Judge's Order (**Doc. #34** in case no. 05-848; **Doc. #24** in case no. 05-964; and **Doc. #26** in case no. 05-998) is **DENIED.** The Motion to Stay (**Doc. #26** in case no. 05-964 and **Doc. #28** in case no. 05-998) is **GRANTED.** The Clerk shall remove these motions from the Court's pending motions list.

**IT IS SO ORDERED.**

3-22-2007
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**